UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SASHEEN PENA, | ) | 1:06-cv-01507-LJO-SMS |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION RE: |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 2) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff is proceeding in forma pauperis and with counsel against the Commissioner of Social Security. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of a final decision of the Commissioner denying an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act). The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b) and Local Rule 72-302(c)(15); the matter is before the Court on the parties' briefs, which have been submitted without oral argument.

I. Procedural History

On September 23, 2004, Plaintiff, who was born on June 29,

1  1985, applied for Supplemental Security Income (SSI), alleging
2  disability due to a learning disability since March 15, 2004.
3  (A.R. 62-64, 42.) After Plaintiff's claim was denied initially
4  and on reconsideration, Plaintiff appeared with counsel and
5  testified at a hearing held before the Honorable Stephen W.
6  Webster, Administrative Law Judge (ALJ) of the Social Security
7  Administration (SSA), on May 24, 2006. (A.R. 42-46, 48-53, 13,
8  160-74.) On July 5, 2006, the ALJ denied Plaintiff's application
9  for benefits. (Id. at 13-19.) After the Appeals Council denied
10 Plaintiff's request for review on August 25, 2006, Plaintiff
11 filed the complaint in this action on October 19, 2006. (Id. at
12 4-6.) Briefing commenced on September 25, 2007, and was completed
13 on October 25, 2007, with the filing of Defendant's opposition.
14      II. Standard and Scope of Review
15      Congress has provided a limited scope of judicial review of
16 the Commissioner's decision to deny benefits under the Act. In
17 reviewing findings of fact with respect to such determinations,
18 the Court must determine whether the decision of the Commissioner
19 is supported by substantial evidence. 42 U.S.C. § 405(g).
20 Substantial evidence means "more than a mere scintilla,"
21 Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
22 preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
23 (9th Cir. 1975). It is "such relevant evidence as a reasonable
24 mind might accept as adequate to support a conclusion."
25 Richardson, 402 U.S. at 401. The Court must consider the record
26 as a whole, weighing both the evidence that supports and the
27 evidence that detracts from the Commissioner's conclusion; it may
28 not simply isolate a portion of evidence that supports the

decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

III. Disability

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such

severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

  The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual

4

functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.[1]

Here, the ALJ concluded that Plaintiff had a severe impairment of a learning disorder that alone or in combination with any other impairments did not meet or medically equal a listed impairment; Plaintiff retained the residual functional capacity (RFC) to perform simple, repetitive tasks; Plaintiff had no past relevant work, but as one with a limited education who was eighteen years old on the alleged onset date of disability, she was able to perform jobs that existed in significant numbers in the economy. (A.R. 15-18.)

IV. Summary of Evidence regarding Plaintiff's Impairment

The medical evidence included the report of Richard Engeln, Ph.D., a clinical psychologist, who examined Plaintiff to evaluate her disability for the Department of Social Services on December 7, 2004. (A.R. 116-25.) Dr. Engeln interviewed Plaintiff, obtained a diagnostic history, and administered the Wechsler Adult Intelligence Scale III, Wechsler Memory Scale III, Bender-Gestalt Test II, and a Mental Status Exam. (A.R. 116.)

The doctor's report reflected that Plaintiff could not read and did not understand her schoolwork; she had attended special education classes and had attendance problems beginning in ninth grade and continuing throughout high school. Plaintiff was alert and oriented without evidence of delusions or confusion; verbal expression was easily understood, appropriate in form and association; there was low interest in developing a knowledge

---

[1] All references to the Code of Federal Regulations is to the 2006 version unless otherwise stated.

5

base and low interest and concentration on tasks presented. She presented with no evidence of any mental or emotional illness or attention deficit issues. (A.R. 118-19.)

Plaintiff's verbal intelligence was measured low borderline. Her visual intelligence measured low in the mild range of mental retardation, which appeared to reflect concentration and effort issues. The more accurate measurement of Plaintiff's cognitive ability was the verbal IQ, low borderline, which was consistent with her interview presentation and educational history, which suggested at least mid borderline intellectual skills. (A.R. 119.)[2] Dr. Engeln wrote, "The obtained standard scores appear to be an underestimate reflecting patient's tendency to withdraw very quickly from tasks requiring processing of multiple units of information at one time. (A.R. 117-18.)

Academic skills pursuant to the Side Range Achievement Test R, with grade equivalent scores, were reading and spelling, beginning third grade; arithmetic, mid second grade. (A.R. 118.)

Plaintiff's working memory was measured high borderline; obtained memory scores appeared to reflect low task acceptance issues and concentration dimensions, and they appeared to be underestimates of abilities. (A.R. 119.)[3]

Dr. Engeln diagnosed V code adjustment, phase of life

---

[2] Plaintiff's WAIS-III IQ estimates were verbal, 70, performance, 60, full scale, 63; the more accurate measurement of her actual cognitive ability was the obtained verbal IQ estimate of 70. (A.R. 118.)

[3] Working memory was 79, high borderline; her immediate auditory memory was 56, moderate range of mental retardation; delayed auditory memory, 61, low in the mild range of mental retardation; auditory recognition delayed, 55, moderate range of mental retardation; immediate visual memory was 75, mid borderline; and delayed visual memory 56, moderate range of mental retardation. (A.R. 118-19.)

6

transition from adolescence to young adulthood, a non-clinical diagnosis reflecting phase of life transition and phase of life task assignment; with mixed personality disturbance with inadequate and avoidant features, with academic delay, moderate to severe, influenced strongly by school attendance issues. (A.R. 119.) He concluded that Plaintiff was mentally competent to manage funds, but because of her passive-dependent role in her family, she had not developed the judgment required for self-management of funds. There were no psychological restrictions to job adjustment; verbally, cognitively, and socially, she was capable of job adjustment in a context where instructions were unidimensional, and normal supervision was provided; concentration and social skills were adequate for work adjustment; and skills were adequate for entry level job adjustment in a setting consonant with educational history and age level. Plaintiff was able to perform one-to-two-step, simple job instructions, but not able to receive complex or technical job instructions. Her long pattern of school avoidance and responsibility avoidance issues were the dimensions that were the most restrictive. (A.R. 119-20.)

Jennifer Bryan-Sanchez, a teacher at the W. E. B. DuBois Public Charter School, completed a teacher's questionnaire on November 8, 2004. (A.R. 97-104.) Bryan-Sanchez had known Plaintiff for some weeks since Plaintiff's enrollment, and she would see Plaintiff twice a week for mathematics-algebra I classes. Plaintiff would sometimes arrive late or come during a tutoring session instead of her regularly scheduled class. Plaintiff was artistically apt and could perform well on easy

7

tasks, but she could not perform basic math functions (adding, subtracting, multiplying, and dividing), and she shut down when forced to come up with her own ideas. (A.R. 97-104.)

With respect to acquiring and using information, Plaintiff had very serious problems with comprehending oral instructions, school and content vocabulary, reading and written material, math problems, class discussions, and new material; she had serious problems reading, doing math problems, participating in class discussions, providing oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem-solving skills in class discussions. She had serious problems expressing ideas in written form. (A.R. 98.)

With respect to attending and completing tasks, Bryan-Sanchez stated that Plaintiff could not finish a task in one class; a five-a-day warm-up would take her about thirty-five minutes to complete, and it usually was not accurate. Plaintiff had an obvious problem working at a reasonable pace or finishing on time, and paying attention when spoken to directly. She had a slight problem focusing long enough to finish assigned work and completing work accurately without careless mistakes. She had serious problems with refocusing to task when necessary and completing assignments. She had very serious problems carrying out single-step and multi-step instructions. (A.R. 99.)

Plaintiff had no social problems, except she had an obvious problem with using adequate vocabulary and grammar to express thoughts and ideas in general, everyday conversation; further, she retreated to not speaking if she did not know the topic. (Id. at 99-100.) Plaintiff took medication, and she frequently missed

8

1 school due to illness. (A.R. 103.)

2 On December 31, 2004, Archimedes Garcia, M.D., a state agency psychiatrist, reviewed Dr. Engeln's report and Bryan-Sanchez's questionnaire. Dr. Garcia opined that Plaintiff would have moderate difficulties understanding, remembering, and carrying out detailed instructions; there were no problems with interaction or adaptation; Plaintiff had the RFC to perform simple, repetitive tasks for two-hour intervals, finishing a normal workday, and maintaining attendance, and she would not need special supervision. She was capable of interacting with coworkers or the general public and would not have difficulty adapting to usual work. (A.R. 126-30.)

On February 2, 2005, Dr. Allen Middleton reviewed all the evidence in the file and Dr. Garcia's assessment, and he affirmed the assessment of Plaintiff's adjustment phase disorder as written. (A.R. 131-44.) He concluded that Plaintiff was only mildly limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (A.R. 141.)

V. Failure to Evaluate the Teacher's Statements

Plaintiff argues that the ALJ's failure to evaluate the evidence concerning Plaintiff's abilities provided for by Plaintiff's teacher, Jennifer Bryan-Sanchez, constitutes reversible error.

Lay witnesses, such as friends or family members in a position to observe a claimant's symptoms and daily activities, are competent to testify to a claimant's condition; the Commissioner will consider observations by non-medical sources as

9

to how an impairment affects a claimant's ability to work. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993). An ALJ cannot discount testimony from lay witnesses without articulating specific reasons for doing so. <u>Id.</u> at 919.

Here, the ALJ noted the report of Bryan-Sanchez concerning Plaintiff's difficulties with comprehending instructions, paying attention, working at a reasonable task and completing tasks, and daily carrying out single-step or multi-step instructions. (A.R. 17.) However, the ALJ did not state any reasons for his apparent rejection of the limitations assessed by the teacher.

Where an ALJ's error lies in a failure properly to discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, the statements from Plaintiff's teacher cannot be said to be inconsequential to the disability determination because Bryan-Sanchez reported limitations inconsistent with the medical evidence upon which the ALJ relied; Bryan-Sanchez reported an inability to understand, remember, and perform even single-step instructions or simple, repetitive tasks. (A.R. 17-18.) Further, the ALJ relied on testimony of a vocational expert (VE) to the effect that jobs existed on the assumption that Plaintiff could perform simple, repetitive tasks; and the VE testified that if a person had the RFC attributed by the ALJ but also had occasional problems with maintaining attention, concentration, and pace,

there would be no jobs for such a person. (A.R. 171-73.)

The ALJ gave reasons for rejecting Plaintiff's mother's reports of Plaintiff's limitations, stating that her reported limitations were not quantified in any way, and no examples were given. (A.R. 17.) However, he gave no reasons whatsoever for his treatment of Bryan-Sanchez's report. It is not reasonable to interpret the ALJ's reasoning concerning Plaintiff's mother's reports as pertaining to the limitations expressed by Bryan-Sanchez because Bryan-Sanchez did quantify her data somewhat (she stated that problems occurred daily), and she reported specific examples (cut/copy and paste as well as designation of specific mathematical functions which Plaintiff could not perform). The Court concludes that reasonably interpreted, the ALJ's decision was lacking in any statement of reasons germane to Bryan-Sanchez's report.

This Court cannot confidently conclude that no reasonable ALJ, when fully crediting the report of Bryan-Sanchez, could have reached a different disability determination. See, Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006). This is because fully crediting her report would lead to a critical inconsistency in the evidence concerning Plaintiff's functional limitations, including but not limited to those based on her comprehension, ability to understand and carry out instructions, and her concentration, persistence, and pace.

Therefore, this case must be remanded for further proceedings to permit the consideration and evaluation of Bryan-Sanchez's report and for the ALJ to state reasons germane to his treatment of this evidence as required at each pertinent stage of

the sequential analysis.

Plaintiff raises issues at various steps of the analysis. At step three, Plaintiff appears to argue that the ALJ's finding that Plaintiff's impairment did not meet a listing was erroneous because it was not supported by substantial evidence. Plaintiff argues that the evidence of Dr. Engeln and Ms. Bryan-Sanchez, Plaintiff's teacher, indicated that her impairment met listing 12.05(C) and/or (D)(3) and/or (4), concerning mental retardation.

It is Plaintiff's burden to establish that his impairment met a listing. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability process. Gonzales v. Sullivan, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

The ALJ expressly found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). He then stated:

> The claimant's Verbal, Performance, and Full Scale

> IQ's were between 60 and 70, but she does not have any physical or other mental impairment imposing an additional or significant work-related limitation of her functioning. Additionally she does not have any marked difficulties in any of the "B" criteria. regarding mental retardation.

(A.R. 16.)

The Court notes that the listing for mental retardation (12.05) requires significantly sub-average general intellectual functioning of severity such that the requirements in subsections A, B, C, or D are satisfied. Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. One way of meeting the listing involves mental incapacity demonstrated by a full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing additional and significant work-related limitations of function. § 12.05 (C). Another way is by having a valid verbal, performance, of full scale IQ of 60 through 70 which results in at least two of four sets of restrictions, including marked restriction of activities of either daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. § 12.05(D).

It may be that the ALJ's conclusion concerning Plaintiff's not having any other impairment imposing additional and/or significant work-related limitations of function, or his findings concerning the "B" criteria, would be the same even if the ALJ fully considered and expressly evaluated Bryan-Sanchez's report. However, it is not clear to this Court what findings the ALJ would make, what reasons for those findings would be stated, and what proceedings would follow based on those findings.

1    Further, at step four, Plaintiff challenges as without the
2 support of substantial evidence the ALJ's finding that Plaintiff
3 could perform simple, repetitive tasks, and his finding that
4 Plaintiff was without occasional problems with maintaining
5 concentration, persistence, or pace.
6    Again, the data set forth by Plaintiff's teacher are
7 pertinent to the ALJ's findings at this step. The Court cannot
8 make findings for the ALJ. A reviewing court cannot affirm an
9 ALJ's decision denying benefits on a ground not invoked by the
10 Commissioner. Stout v. Commissioner, 454 F.3d at 1054 (citing
11 Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)). Applying
12 the harmless error rule in such a situation would in effect
13 result in the Court's affirming a decision on a ground not
14 invoked by the Commissioner in denying the benefits originally.
15    Therefore, the Court concludes that the matter should be
16 remanded to permit the ALJ to consider, evaluate, and state
17 reasons for the evaluation of, the evidence from Plaintiff's
18 teacher, Jennifer Bryan-Sanchez at all pertinent stages of the
19 sequential analysis, including whether Plaintiff suffered an
20 impairment or impairments that met or medically equaled a
21 listing, a determination of Plaintiff's residual functional
22 capacity, and a determination of whether Plaintiff could engage
23 in past relevant work or other work existing in the economy.
24    VI. RECOMMENDATION
25    Accordingly, it IS RECOMMENDED that
26    1) Plaintiff's social security complaint BE GRANTED, and
27    2. The matter BE REMANDED pursuant to sentence four of 42
28 U.S.C. § 405(g) for further consideration, consistent with this

14

decision, of Plaintiff's status as disabled, including whether or not Plaintiff's impairments met or equaled a listing, and, to the extent appropriate, Plaintiff's residual functional capacity, whether Plaintiff could perform her past work, and whether on the basis of the Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform any other gainful and substantial work within the economy; and

    3. Judgment BE ENTERED for Plaintiff Sasheen Pena and against Defendant Michael J. Astrue.

    This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 29, 2008**          /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE